J-S25039-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUIS ALEJANDRO GENAO | : | |
| | : | |
| Appellant | : | No. 1211 MDA 2019 |

Appeal from the Judgment of Sentence Entered July 15, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0003806-2017

BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED AUGUST 21, 2020**

Appellant, Luis Alejandro Genao, appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas, following his jury trial convictions for rape of a child, involuntary deviate sexual intercourse ("IDSI") with a child, two counts of indecent assault, two counts of corruption of minors ("COM"), and endangering the welfare of a child ("EWOC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On December 5, 2017, the Commonwealth charged Appellant with the aforementioned offenses in connection with the sexual abuse of his stepdaughter ("Victim") from the time Victim was approximately nine to

_____

[1] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 3126(a)(7), 3126(a)(8), 6301(a)(1)(ii), 6301(a)(1)(i), and 4304(a)(1), respectively.

twelve years old.[2]  During that time, Appellant raped Victim and performed oral sex on her, among other things.  When Victim was around twelve years old, Appellant stopped physically abusing her but continued to make sexually explicit comments about her body.  When Victim was around sixteen years old, she disclosed some of the abuse to her mother, Appellant's wife.  Victim's mother did not believe the allegations and sent Victim to live with her biological father.  After Victim disclosed the sexual abuse to her father, he asked that Victim visit her maternal aunt in New York City to repeat the allegations.  Victim's father does not speak English well and had difficulty processing the allegations.  Victim then disclosed the details of the sexual abuse to her aunt, who reported the abuse to the proper authorities.

Appellant proceeded to a jury trial on March 19, 2019.  At trial, the Commonwealth presented testimony from Victim, Victim's father, Victim's maternal aunt, Roberta Fratzola, a licensed professional counselor specializing in delayed reporting in child sexual abuse cases, Sandra Federo, a nurse practitioner who examined Victim after the abuse allegations, and Detective David Rodick.  Appellant testified in his defense and presented testimony from Victim's mother, Victim's biological brother, and four character witnesses.

On the second day of trial, Juror #11 approached the tipstaff, and said she was uncomfortable with the testimony from the first day of trial and did

---

[2] Victim was born in August 2000.

not sleep at all that evening. The court brought Juror #11 into chambers and questioned her about her concerns. The juror indicated the subject matter of the case made her nervous. The court questioned the juror about her ability to be fair and impartial under the circumstances, and the juror agreed she could be fair and impartial. The juror reiterated twice more that she could be fair and impartial notwithstanding her discomfort with the subject matter. Upon Appellant's motion to strike Juror #11, the court agreed to question her again on the record, and to permit the parties to examine her.

The following exchange took place:

> [The court]: [Juror #11], you spoke to my tipstaff this morning and said you had concerns about the subject matter in this trial and that you [had] trouble sleeping last night?
>
> [Juror #11]: Um-hum.
>
> [The court]: We previously brought you into chambers and went over that with you. We're going to do it now again on the record—
>
> [Juror #11]: Okay.
>
> [The court]: —to make sure we have a clean record in this case.
>
> [Juror #11]: Sure.
>
> [The court]: Your concerns are what with this trial?
>
>                   \*     \*     \*
>
> [Juror #11]: The subject matter was more, I guess, why I didn't sleep well.
>
> [The court]: Okay. Obviously, this is a serious matter.

[Juror #11]:    Right.

[The court]:    And my question to you is—I know you've expressed these concerns to us.  Can you still be fair and impartial in this case?  Can you listen to the evidence?  Can you follow the instructions of the Court?  And can you make a decision in this case based upon the evidence that you believe and the instructions by the Court in the law?  Could you do that?

[Juror #11]:    Yes.

[The court]:    Okay.  Could you still be fair and impartial to both sides?

[Juror #11]:    Yes.

*    *    *

[The court]:    Counsel, any questions?

[Defense]:    Am I correct you've already formed an opinion as to the guilt of [Appellant]?

[Juror #11]:    No.

[Defense]:    No other questions.

*    *    *

[The court]:    As we sit here today in my chambers at 9:18 in the morning on Wednesday morning, you have not formed any fixed opinion in this case?

[Juror #11]:    No, I haven't heard everything yet.

[The court]:    Okay.  And you can keep a clear and open mind going forward?

[Juror #11]:    Yes.

[The court]:    And will you have the ability to follow the instructions that I give you on the law and determine the

facts as you see them—because you're the fact finder in this case, you make the decision—could you do that?

[Juror #11]:   Yes.

[The court]:   Okay.   Could you set aside your feelings about the subject matter of this case and decide this case based upon the evidence that you believe and the law as I instruct you?

[Juror #11]:   Yes.   I'll listen to the facts.

[The court]:   And as you sit here today at this time, you do not have a fixed opinion on this case?

[Juror #11]:   No, I do not.

[The court]:   Okay.  Thank you very much.

[Juror #11]:   Thank you.

(N.T. Trial, 3/20/19, at 197-200).   Based on the court's colloquy, the court denied Appellant's motion to strike Juror #11.  The court stated: "I find [Juror #11] does not have a fixed opinion and that she can listen and follow the instructions and listen to the evidence and make a decision based upon the evidence that she believes and the law as I instruct her." (*Id.* at 200-01).

During the charging conference, the defense requested a "low-grade" jury instruction concerning expert Roberta Fratzola's testimony.   Defense counsel explained that a low-grade instruction "informs the jury that expert opinion is considered of a low-grade when the expert testifies not from personal observation but expresses an opinion in response to a hypothetical question." (*Id.* at 303).   The Commonwealth objected to the instruction, claiming the proffered charge had been removed from the standard jury

instructions. The Commonwealth further argued Ms. Fratzola did not even render an opinion in this case; rather, she testified in an educational capacity to inform the jurors about delayed reporting in child sexual abuse cases generally, and she did not offer any opinion about Victim's delayed reporting in this case. The court agreed with the Commonwealth's position and declined to give Appellant's requested charge. Nevertheless, the court said it would give the standard jury instruction concerning expert testimony in general. (*Id.* at 304). Appellant objected to the court's ruling.

At the conclusion of trial, the jury convicted Appellant on all counts. On June 21, 2019, the court sentenced Appellant to an aggregate term of 240 to 480 months' imprisonment. The court entered an amended sentencing order on July 15, 2019, fixing a typographical error concerning the dates of Appellant's credit for time served. Appellant timely filed a notice of appeal on July 18, 2019, at docket No. 1210 MDA 2019, from the June 21, 2019 judgment of sentence. Appellant also filed a timely notice of appeal on July 18, 2019, at docket No. 1211 MDA 2019, from the amended July 15, 2019 judgment of sentence. On August 27, 2019, this Court *sua sponte* dismissed as duplicative the appeal at docket No. 1210 MDA 2019. Appellant timely complied with the trial court's Pa.R.A.P. 1925(b) concise statement order.

Appellant raises two issues for our review:

> Did the trial court err in failing to strike, over the objection of defense counsel, Juror #11, who indicated that she could not sleep and had nightmares after hearing [Victim]'s testimony?

Did the trial court err in denying [Appellant's] request for a low grade or value for expert witness instruction concerning the testimony of Roberta Fratzola?

(Appellant's Brief at 3).

In his first issue, Appellant argues Juror #11 was so affected by Victim's testimony that she could not sleep. Appellant asserts that Juror #11 said the subject matter of the case disturbed her. Appellant acknowledges Juror #11's testimony that she could be fair and impartial, but Appellant suggests Juror #11's statement that she could not sleep based on the subject matter of the case belies her claim. Appellant insists the court should have stricken Juror #11 in an abundance of caution. Appellant concludes he was deprived of a fair jury trial, and this Court must remand for a new trial. We disagree.

Our review of this issue implicates the following legal principles:

> The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. This discretion exists even after the jury has been impaneled and the juror sworn. The common thread of the cases is that the trial judge, in his sound discretion, may remove a juror and replace [her] with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform [her] duty as a juror is impaired.

**Commonwealth v. Marrero**, 217 A.3d 888, 890 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 226 A.3d 968 (2020) (internal citations and quotation marks omitted). "[A] finding regarding a [juror's] impartiality is based upon determinations of demeanor and credibility that are peculiarly within a trial court's province. Its predominant function in determining juror bias involves

credibility findings whose basis cannot be easily discerned from an appellate record." ***Commonwealth v. Rush***, 162 A.3d 530, 537 (Pa.Super. 2017), *appeal denied*, 642 Pa. 588, 170 A.3d 1049 (2017) (internal citations and quotation marks omitted).

Further, "[i]t is the appellant's burden to show that the jury was not impartial." ***Id.*** This Court has also decided that *per se* prejudice does not result where a juror becomes upset during trial. ***See Commonwealth v. Pander***, 100 A.3d 626 (Pa.Super. 2014) (*en banc*) (holding appellate counsel was not ineffective for failing to raise on appeal court's refusal to strike juror; fact that juror was disturbed by pictures of victim, by itself, does not indicate juror's inability to consider evidence impartially; where trial court was satisfied by juror's response that juror could remain fair, and where trial court has had opportunity to view juror in question, we do not lightly reconsider court's decision; because juror repeatedly stated that she could remain fair and impartial and was questioned by trial counsel and court, appellant's ineffectiveness claim fails).

Our Supreme Court has explained:

> The test for determining whether a prospective juror should be disqualified is whether [she] is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor[.] It must be determined whether any biases or prejudices can be put aside on proper instruction of the court[.] A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or situational, with the parties, counsel, victims, or witnesses that the

court will presume a likelihood of prejudice or demonstrates a likelihood of prejudice by his or her conduct or answers to questions.

*Commonwealth v. Briggs*, 608 Pa. 430, 498-99, 12 A.3d 291, 333 (2011), *cert. denied*, 565 U.S. 889, 132 S.Ct. 267, 181 L.Ed.2d 157 (2011) (internal citation omitted). We employ "the same analysis in cases where a question arises about a juror's impartiality during trial." *Rush, supra* at 538.

Instantly, on the second day of trial, Juror #11 informed tipstaff that she was uncomfortable with the subject matter of the case and had difficulty sleeping the night before.[3] The court brought Juror #11 into chambers and colloquied her, during which Juror #11 stated three times that she could be fair and impartial, despite her discomfort with the facts of the case. Upon Appellant's motion to strike, the court colloquied Juror #11 once again, on the record, and gave the parties an opportunity to ask questions. Following a lengthy colloquy, Juror #11 **repeatedly** stated that she could be fair and impartial. Juror #11 further confirmed that she had no fixed opinion concerning Appellant's guilt. Under these circumstances, the trial court declined to remove Juror #11. We see no abuse of discretion concerning the court's ruling. *See Marrero, supra*; *Rush, supra*. Therefore, Appellant's first issue merits no relief.

In his second issue, Appellant argues the court should have given his

---

[3] Notwithstanding the phrasing of Appellant's first issue on appeal, nothing supports Appellant's contention that Juror #11 said she had "nightmares."

requested low-grade jury instruction concerning Ms. Fratzola's testimony. Appellant asserts that Ms. Fratzola testified as an expert on delayed reporting in child sexual abuse cases. Appellant claims Ms. Fratzola's testimony was of a low-grade because she did not make any personal observations of Victim or review any evidence pertaining to this case. Appellant maintains Ms. Fratzola's testimony about why some children delay reporting sexual abuse implicitly constituted hypothetical answers about why Victim delayed reporting her alleged sexual abuse. Appellant contends this case is not just about Victim's failure to render a "prompt complaint," but about multiple times during which Victim failed to report the alleged abuse. Appellant concludes the court deprived the jury of a full and complete statement of law and denied Appellant a fair trial, and this Court must remand for a new trial. We disagree.

Our standard of review concerning a trial court's decision on jury instructions is well-settled:

> [A]n appellate court will reverse a court's decision [to deny a requested jury instruction only] when it abused its discretion or committed an error of law. [Our] key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations.

***Commonwealth v. Cannavo***, 199 A.3d 1282, 1286 (Pa.Super. 2018), *appeal denied*, ___ Pa. ___, 217 A.3d 180 (2019) (internal citations and quotation marks omitted). Additionally, "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are

guides only." ***Commonwealth v Simpson***, 620 Pa. 60, 96 n.24, 66 A.3d 253, 274 n.24 (2013).

Generally, "[a]n instruction that expert opinion testimony is 'low-grade' evidence is proper when: 1) [t]he expert's opinion is based on facts recited in a hypothetical question; or 2) [t]he expert's opinion is contradicted by direct evidence." ***Commonwealth v. Correa***, 620 A.2d 497, 502 (Pa.Super. 1993), *appeal denied*, 536 Pa. 638, 639 A.2d 24 (1993). Nevertheless, this Court has explained that, "in actual practice, application of the low-grade witness instruction is more constrained." ***Commonwealth v. Hernandez***, 615 A.2d 1337, 1344 (Pa.Super. 1992) (analyzing cases applying low-grade jury instruction and concluding instruction is usually appropriate only in cases involving opinion testimony by psychiatrist, where insanity defense has been raised). In ***Hernandez***, this Court rejected application of the low-grade jury instruction stating:

> A fair characterization of the low-grade witness instruction would be that it was designed specifically for dealing with the competency of lay witnesses and psychiatrists testifying on questions of sanity.
>
> A low-grade witness instruction is not applicable here. This case is an involuntary deviate sexual intercourse case. No one had been asked to testify as to [defendant's] sanity in a homicide. [The expert's] statement was not rebutted by other expert testimony, or by the physical evidence. There is no basis for giving a low-grade witness instruction.

***Id.*** at 1344.

Instantly, during the charging conference, Appellant requested a low-

grade jury instruction concerning expert Roberta Fratzola's testimony. The Commonwealth objected to the instruction, claiming the proffered charge had been removed from the standard jury instructions. The Commonwealth further argued that Ms. Fratzola did not even render an opinion in this case; rather, she testified in an educational capacity to inform the jurors about delayed reporting in child sexual abuse cases generally, and she did not offer any opinion about Victim's delayed reporting in this case.

Our review of the record confirms that Ms. Fratzola testified about delayed reporting in child abuse cases, generally. Ms. Fratzola explained there are a variety of reasons why children delay reporting and that "[e]verybody is different in how they tell and what they tell. So it's really up to the child or the adolescent when they tell it…. It's their story to tell…" (N.T. Trial, 3/19/19, at 172). Ms. Fratzola did not testify about Victim specifically or render any opinion on Victim's credibility.

The court declined to give Appellant's requested low-grade jury instruction, and instead said it would give the standard jury instruction concerning expert testimony generally. **See** Pa. SSJI (Crim), § 4.10A. Additionally, the court gave the "failure to make prompt complaint" jury instruction, over the Commonwealth's objection. **See** Pa. SSJI (Crim), § 4.13A. Our review of the jury instructions confirms the trial court adequately, accurately, and clearly stated the law. **See Cannavo, supra**. Given the

limited application of the low-grade instruction, **see Hernandez, supra**,[4] and the removal of low-grade instruction from the standard jury instructions, we see no reason to disturb the trial court's denial of the requested jury instruction. **See Cannavo, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/2020

_____

[4] Appellant relies heavily on **Commonwealth v. Davis**, 518 Pa. 77, 541 A.2d 315 (1988), one of the few cases commenting on a low-grade jury instruction not involving an insanity defense. **Davis** is distinguishable, however, because the expert in that case opined, at least indirectly, on the victim's credibility. **See id.** at 80, 541 A.2d at 316 (reiterating expert's testimony that "children who have not been involved in sexual experiences typically do not fantasize about sexual experiences" and "[m]y experience with children who have had some type of sexual experiences when they report about it, typically it is based upon some event that actually occurred and not some fantasized or fabricated experience"). As previously stated, Ms. Fratzola offered no such opinion on Victim's credibility in this case.