J-S36023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW DOUGAN | : | |
| | : | |
| Appellant | : | No. 2025 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 19, 2021
In the Court of Common Pleas of Pike County Criminal Division at No(s):
CP-52-CR-0000233-2019

BEFORE:  BOWES, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:              **FILED MARCH 26, 2024**

Appellant Andrew Dougan appeals from the judgment of sentence imposed following his conviction of driving under the influence (DUI)-Tier III (second offense), DUI-general impairment (second offense), accident involving damage to attended vehicle or property, and related summary offenses.[1]  On appeal, Appellant raises multiple claims relating to alleged violations of Appellant's right to a speedy trial, various evidentiary issues, and challenges to his sentence.  After careful review, we affirm.

The trial court set forth the following factual and procedural history:

On March 21, 2019, Trooper Jessica Quinn of the Pennsylvania State Police, Blooming Grove Barracks, was on duty in the morning hours in full uniform and a marked vehicle. At 7:39 a.m., Trooper Quinn was dispatched to the scene of a one vehicle

_____

[1] 75 Pa.C.S. §§ 3802(c), (a)(1), respectively.

accident in Lehman Township, Pike County. The [Trooper] arrived at the scene of the accident at 8:04 a.m.

Upon her arrival, Trooper Quinn observed a red Chrysler Pacifica vehicle with heavy damage. Emergency medical providers were already on scene providing treatment to the operator of the vehicle. Trooper Quinn subsequently identified the operator of the Chrysler Pacifica as [Appellant]. The [Trooper] noted that [Appellant] had cuts and burns on his face and hands, was hesitant in answering questions, had slurred speech and had an odor of alcohol about him. Trooper Quinn also observed a can of [alcoholic] beverage, Four [Loko], inside the subject vehicle. The vehicle itself had a very strong odor of alcohol in it.

Another [Trooper] on scene requested [Appellant] to take a pre-breath test to which [Appellant] refused. As [Appellant] requested and was in need of further medical treatment, he was thereafter transported to the Lehigh Valley Health Network Pocono Hospital (LVHN Pocono) in East Stroudsburg, Monroe County. [Appellant] was transported in the ambulance while Trooper Quinn followed the ambulance to LVHN Pocono. After arriving at LVHN Pocono, [Appellant] was brought into the hospital for evaluation and treatment. Trooper Quinn also entered the hospital and read [Appellant] his *O'Connell*[2] warnings while he was waiting for an x-ray.

When Trooper Quinn asked [Appellant] to take a blood test, he stated he wanted medical attention. The [Trooper] eventually considered [Appellant's] response to be a refusal to her request for blood alcohol testing. Trooper Quinn thereafter left the hospital and obtained a search warrant for the results of [Appellant's] medical blood test. Such results were later obtained and revealed a blood alcohol content [(BAC)] of 0.16. The hospital record revealed that [Appellant's] blood was drawn at 10:39 a.m. on the day in question.

Trial Ct. Order, 1/19/21, at unnumbered pages 2-3.

On July 13, 2021, following a two (2) day jury trial, [Appellant] was found guilty of one (1) count of [DUI-general impairment] and one (1) count of [DUI-highest rate of alcohol]. On the verdict

---

2 *See Com., Dept. of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

slip, the jury also found, as to the second noted DUI offense, that [Appellant's BAC] within two (2) hours of driving was 0.16 percent or higher. Following the same trial, [the trial court] found [Appellant] guilty of [related summary offenses].

On August 19, 2021, [the trial court] sentenced [Appellant] on the [DUI-highest rate of alcohol] conviction to incarceration in a state correctional facility [for] not less than fourteen (14) months nor more than seven (7) years. On the noted summary offenses, [the trial court] sentenced [Appellant] to pay fines and costs. [The trial court] also noted in its sentencing order that it declined to enter a sentence on [Appellant's DUI-general impairment] conviction since it merged with his [DUI-highest rate of alcohol] conviction.

On August 30, 2021,[3] [Appellant] filed [a] post-sentencing motion for reconsideration. On September 1, 2021, the [trial court] entered its order denying [Appellant's] post-sentencing motion for reconsideration without hearing or oral argument. On October 1, 2021, [Appellant timely] filed his notice of appeal to the Pennsylvania Superior Court from [the trial court's] August 19, 2021 sentencing order. On April 28, 2022, the Superior Court entered an order granting leave to [Appellant's] prior legal counsel to withdraw his appearance on behalf of [Appellant]. The Superior Court also directed [the trial court] to determine whether [Appellant] was eligible for court-appointed counsel for his appeal. By order dated June 13, 2022, [the trial court] determined that [Appellant] was eligible for court-appointed counsel and appointed Lindsey Collins, Esquire[,] on behalf of [Appellant].

By order filed October 4, 2022, the Superior Court remanded the above proceeding to [the trial court] for a period of ninety (90) days to direct that counsel for [Appellant] file a concise statement of matters complained of on appeal and for [the trial court] to file a supplement [Pa.R.A.P.] 1925 opinion in accordance with the time frames stated in said order. [Appellant], through court-appointed counsel, filed his concise statement of matters complained of on appeal on October 25, 2022.

Trial Ct. Op., 1/3/23, at 1-3 (citations omitted and formatting altered).

_____

[3] We note that August 29, 2021 fell on a Sunday. Accordingly, Appellant timely filed his post-sentence motion. *See* 1 Pa.C.S. § 1908.

On appeal, Appellant raises the following issues for our review:

1. Whether the trial court erred in denying [Appellant's] pre-trial omnibus motion and post-sentence motion seeking dismissal of his charges due to a violation of his rights to a speedy trial and due process under the law[?]

2. Whether the trial court erred in making the jury aware of [Appellant's] prior conviction under 75 Pa.C.S. § 3735 during jury selection[?]

3. Whether the trial court erred in allowing the Commonwealth to introduce evidence at trial relating to [Appellant's] blood alcohol in violation of the "two-hour rule" of 75 Pa.C.S. § 3802[?]

4. Whether [Appellant's Sixth] Amendment right to confrontation was violated by the Commonwealth's failure to call neither the laboratory technician who drew [Appellant's] blood nor the individual(s) who tested [Appellant's] blood sample at Lehigh Valley Hospital[?]

5. Whether the trial court erred in permitting the Commonwealth's expert, Michael Coyer, to testify to evidence that is not supported by science, specifically retrograde extrapolation, where he admittedly did not know many of the details about [Appellant] which were necessary for this process[?]

6. Whether the trial court erred in allowing the Commonwealth to introduce testimony or evidence regarding any items from [Appellant's] vehicle, to wit an empty can and any other items found within or around [Appellant's] vehicle, where information regarding the same were not produced in discovery[?]

7. Whether the trial court erred in allowing the Commonwealth to call Linda Moyer as a witness where the prejudicial nature of her testimony outweighed any probative value, if any at all[?]

8. Whether the trial court erred in allowing the Commonwealth call Security Officer Joe Clemente as a witness where the prejudicial nature of his testimony outweighed any probative value, if any at all[?]

- 4 -

9.      Whether the testimony of Security Officer Joe Clemente without the production of an incident report from the date of the incident was in violation of the Best Evidence Rule[?]

10.     Whether the trial court erred in imposing an excessive sentence when sentencing [Appellant] at the highest range of the sentencing guidelines on the charge of driving under the influence, highest rate—second offense (F-3)[?]

11.     Whether the trial court erred in denying [Appellant's] motion for reconsideration of sentence[?]

Appellant's Brief at 9-10 (some formatting altered).[4]

## Rule 600

In his first issue, Appellant alleges that the trial court erred when it denied his motion to dismiss pursuant to Pa.R.Crim.P. 600. Appellant's Brief at 22. Specifically, Appellant contends that the trial court failed to hold a Rule 600 hearing and did not "engage in any analysis, including making a determination of whether the Commonwealth met its obligation to act with

---

[4] We refer to the oft-cited quote the late Judge Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court, it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. . . . When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Commonwealth v. Lutes*, 793 A.2d 949, 955 n.1 (Pa. Super. 2002) (citations omitted).

due diligence through the life of this case, nor did the trial court provide any computations of time in its ruling." *Id.* at 23.

Under both Article I, Section 9 of the Pennsylvania Constitution and Rule 600 of the Pennsylvania Rules of Criminal Procedure, a criminal defendant in this Commonwealth enjoys the right to a speedy trial. ***Commonwealth v. Barbour***, 189 A.3d 944, 954 (Pa. 2018). Rule 600 sets forth the procedure for a defendant to seek relief in the event that his or her right to a speedy trial may have been violated. ***See generally*** Pa.R.Crim.P. 600. Specifically, Rule 600 permits a defendant to file a written motion. Pa.R.Crim.P. 600(D)(1). Once a Rule 600 motion has been filed, the trial court is required to conduct a hearing on the motion. ***Id.***

It is well settled that parties appearing before this Court are required to comply with the Pennsylvania Rules of Appellate Procedure. ***See Commonwealth v. Vurimindi***, 200 A.3d 1031, 1037 (Pa. Super. 2018); ***see also McGee v. Muldowney***, 750 A.2d 912, 913 n.1 (Pa. Super. 2000) (stating that compliance with the Rules of Appellate Procedure is a mandate and that the Rules of Appellate Procedure are not to be treated as a "guidepost").

This Court has explained:

> With regard to transcripts, our Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary for resolution of the issues [the] appellant raises on appeal. ***See*** Pa.R.A.P. 1911(a). When an appellant fails to adhere to the precepts of Rule 1911 and order all necessary transcripts, any claims that cannot be resolved in the absence of the necessary

transcripts . . . must be deemed waived for the purpose of appellate review.

***Interest of G.E.W.***, 233 A.3d 893, 899-900 (Pa. Super. 2020) (citation omitted); ***see also Commonwealth v. Lesko***, 15 A.3d 345, 410 (Pa. 2011) (reiterating that it is the appellant's responsibility to provide a complete record for review, including any necessary transcripts).

In the instant case, the record reflects that on March 11, 2021, Appellant filed an omnibus pretrial motion, which included a motion to dismiss pursuant to Rule 600.  **See** Appellant's Pretrial Omnibus Motion, 3/11/21, at 3-8.  The trial court, in its opinion, indicated that a hearing was held on Appellant's omnibus pretrial motion on June 7, 2021.  Trial Ct. Op. at 4.  The certified record, however, does not indicate that Appellant ever ordered the transcript of the June 7, 2021 hearing.  **See** Appellant's Transcript Request Form, 2/10/22.  Without this transcript, this Court cannot effectuate meaningful appellate review.  ***See G.E.W.***, 233 A.3d at 899-900.  Accordingly, this issue is waived on appeal.

### Jury Selection

In his next issue, Appellant alleges that the trial court erred by referencing Appellant's prior conviction for homicide by vehicle while DUI during jury selection.  Appellant's Brief at 23-24.  Specifically, Appellant contends that, "[t]his information unfairly prejudiced [] Appellant and as such, tainted the jury from the onset of the trial proceedings before testimony could even be elicited."  *Id.* at 25.

The Pennsylvania Rules of Appellate Procedure mandate that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a); *see also Commonwealth v. Marrero*, 217 A.3d 888, 890 (Pa. Super. 2019).

Here, the record reflects that the trial court advised the prospective jury pool of the charges against Appellant. N.T. Jury Selection, 7/6/21, at 2-3. As part of its summation, the trial court stated that Appellant had been previously convicted of homicide by vehicle while DUI. *Id.* at 3. However, Appellant did not raise any objection to the trial court's summation. *See id.* Therefore, because Appellant failed to raise this issue before the trial court, this issue is waived for appellate review. *See* Pa.R.A.P. 302(a); *Marrero*, 217 A.3d at 892.

### Evidentiary Rulings

In his next seven issues, Appellant raises challenges to evidentiary rulings made by the trial court. *See* Appellant's Brief at 25-40.

We review a trial court's evidentiary rulings for an abuse of discretion. *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa. Super. 2020). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017) (citation omitted). "[W]hen reviewing the trial court's exercise of discretion, it is improper for an appellate court to step[] into the shoes of

the trial judge and review the evidence *de novo*." **Commonwealth v. Gill**, 206 A.3d 459, 467 (Pa. 2019) (citation omitted).

Two-Hour Rule

In the first of his evidentiary challenges, Appellant contends that the trial court "erred in allowing the Commonwealth to introduce evidence at trial relating to [Appellant's BAC] in violation of the 'two-hour rule' of 75 Pa.C.S.[] § 3802." Appellant's Brief at 25. Specifically, Appellant argues that the Commonwealth "failed to prove any reasonable timeline beginning with the time of the accident and ending with the time of [Appellant's] blood draw." *Id.* at 27. Appellant ultimately concludes that as a result of the Commonwealth's failure to provide such a timeline, the trial court should have precluded the Commonwealth from introducing evidence of Appellant's blood test results at trial. *Id.*

In the instant case, the trial court reached the following conclusion regarding the two-hour rule:

> [The trial court] found that the Commonwealth established good cause for the [blood] test not being administered within the two (2) hour limit. In support thereof, [the trial court] concluded that Trooper Quinn responded in a timely manner to the accident scene, made appropriate inquiries as to the status of [Appellant] at the accident scene, that [Appellant] refused to take a [preliminary] breath test and that the ambulance personnel transported [Appellant] timely to the closest hospital which was located approximately 35 minutes away from the accident scene.
>
> While at the hospital, Trooper Quinn requested [Appellant] to submit to chemical testing to which he refused. The hospital staff subsequently drew [Appellant's] blood at 10:29 a.m. During the entire time from Trooper Quinn's arrival on scene until the drawing [of Appellant's] blood at 10:29 a.m., [Appellant] was under the

- 9 -

constant direct supervision of either law enforcement and/or medical personnel. There was no evidence presented of [Appellant's] imbibing any alcoholic beverages or regurgitating during that time frame.

Based on the above pre-trial findings, [the trial court] concluded that the Commonwealth established good cause for the chemical testing not having been administered within two (2) hours of when [Appellant] drove his vehicle. In accord with the Superior Court's earlier direction in **Commonwealth v. Eichler**, 133 A.3d 775 (Pa. Super. 2015), and our Supreme Court's more recent ruling in **Commonwealth v. Starry**, 224 A.3d 312 (Pa. 2020), [the trial court] permitted the Commonwealth to introduce evidence of [Appellant's] blood alcohol testing even though conducted more than two (2) hours after his driving of his vehicle.

Trial Ct. Op., 1/3/23, at 6-7.

In its Rule 1925(a) opinion, the trial court noted that it previously addressed this issue in its January 19, 2021 order denying Appellant's omnibus pre-trial motion. **Id.** at 5. The January 19, 2021 order referenced a hearing that the trial court held on Appellant's pre-trial motion on October 30, 2020. **See** Trial Ct. Order, 1/19/21, at unnumbered page 2. Upon review, however, we cannot determine whether the trial court abused its discretion without the transcript from the October 30, 2020 omnibus pretrial hearing, as this issue raises a question of both fact and law. Because Appellant failed to provide this Court with the necessary transcripts to effectuate meaningful appellate review, we are constrained to find that Appellant has waived this issue on appeal. **See G.E.W.**, 233 A.3d at 899-900.

Confrontation Clause

In his next issue, Appellant contends that the trial court violated his rights under the Confrontation Clause by admitting the results of Appellant's

BAC test without requiring the Commonwealth to produce "either of the essential witnesses needed under the Confrontation Clause—the person who drew the blood, or someone who personally knew the manner in which it was done and precisely at what time, and the lab technician who performed the test." *Id.* at 30-31.

"Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has a right to confront witnesses against him." *Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. 2001) (citation omitted). "We have held that the Confrontation Clause of the Pennsylvania Constitution affords defendants the same rights as the Sixth Amendment of the United States Constitution." *Commonwealth v. Yohe*, 39 A.3d 381, 384 n.4 (Pa. Super. 2012) (citation omitted). As the Supreme Court of the United States has explained, the Confrontation Clause "prohibits out-of-court testimonial statements by a witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination." *Commonwealth v. Yohe*, 79 A.3d 520, 531 (Pa. 2013), citing *Crawford v. Washington*, 541 U.S. 36, 53-56 (2004) (footnote omitted).

It is well settled that the Confrontation Clause applies solely to statements that are testimonial in nature. *Commonwealth v. Williams*, 103 A.3d 354, 358-59 (Pa. Super. 2014). In the context of a DUI case, forensic analyses of blood are within the "core class of testimonial statements" subject to Confrontation Clause protection. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009).

In order to determine whether a report detailing the results of a blood test is testimonial, "a court must determine whether the primary purpose [] was to establish or prove past events relevant to a later criminal prosecution." ***Commonwealth v. Allshouse***, 36 A.3d 163, 175 (Pa. 2012); ***see also Commonwealth v. Banko***, 268 A.3d 484, 492 (Pa. Super. 2022) (reiterating that evidence is testimonial in nature where its primary purpose was to support an arrest and "create an out-of-court substitute for trial testimony"). However, where a blood test is administered for the purpose of medical treatment, and not "to establish nor prove past events relevant to a later criminal prosecution," that evidence is non-testimonial in nature. ***Id.***

In the instant case, the record reflects that Trooper Jessica Quinn obtained Appellant's medical records from Pocono Medical Center in order to ascertain the amount of alcohol present in Appellant's blood via search warrant. N.T. Trial, 7/12/21, at 178. Trooper Quinn testified that hospital personnel determined the alcohol content of Appellant's blood for the purpose of medical treatment, and not at the request of law enforcement. ***Id.*** Because Appellant's blood draw was the result of medical treatment, the report detailing Appellant's BAC was not testimonial. ***See Banko***, 268 A.3d at 492. Therefore, the Confrontation Clause does not apply. ***See id.*** Accordingly, the trial court did not abuse its discretion when it admitted the results of Appellant's BAC test into evidence, and Appellant is not entitled to relief. ***Luster***, 234 A.3d at 838.

Expert Testimony

In his next issue, Appellant raises a challenge to the admission of expert testimony from forensic toxicologist Michael Coyer, Ph.D., specifically with regard to his testimony addressing retrograde extrapolation. Appellant's Brief at 31. Appellant alleges that Dr. Coyer's testimony was not supported by science because Dr. Coyer "did not know many of the details about [Appellant] which were necessary for this process." *Id.* Appellant further argues that Dr. Coyer's report was the product of conjecture or guesswork. *Id.* at 34. Ultimately, Appellant concludes that Dr. Coyer's testimony "should have been deemed inadmissible against [] Appellant in relation to the charge of violating section 3802(c) [of the Vehicle Code] since that charge requires proof that [Appellant] was driving with a blood alcohol percentage of .16 or greater and the testimony did not advance the inquiry and was inadmissible for purposes of that offense." *Id.*

Rule 703 of the Pennsylvania Rules of Evidence provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

It is well settled that "[e]xpert testimony is incompetent if it lacks an adequate basis in fact." *Commonwealth v. Ward*, 188 A.3d 1301, 1311 (Pa. Super. 2018). As such, an expert's testimony must be "based on more than

mere personal belief," and "must be supported by reference to facts, testimony or empirical data." ***Snizavich v. Rohm & Haas Co.***, 83 A.3d 191, 195 (Pa. Super. 2013) (citations omitted).

Further, our Supreme Court has explained:

An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture. . . . To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion, based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.

***City of Philadelphia v. W.C.A.B. (Kriebel)***, 29 A.3d 762, 770 (Pa. 2011) (citation omitted).

This Court has described retrograde extrapolation as follows:

Relation back or retrograde extrapolation is the process of projecting data, by using inferences, into an unknown area and thus achieving a conjectural knowledge of the unknown. That is, retrograde extrapolation means several factors are applied to the test results to arrive at an educated estimate of a person's BAC at the time of driving.

***Commonwealth v. Weir***, 738 A.2d 467, 469 n.3 (Pa. Super. 1999) (citation omitted).

[A] person's blood alcohol level fluctuates with the passage of time, such that the level gradually rises after drinks have been consumed until a peak is reached roughly one hour after drinking has ceased, and that thereafter the level declines[.] . . .

- 14 -

> In cases where test results show levels of alcohol significantly above 0.10%[5] and where blood samples have been obtained soon after suspects have been stopped, there is a very strong inference that blood alcohol levels were in the prohibited range while driving. However, where . . . the blood test results barely exceeded the 0.10% level and the lapse of time between driving and the taking of the blood sample was not insignificant, the inference of guilt is weakened.

*Id.* at 469 (citation omitted).

In the instant case, Dr. Coyer was admitted as an expert in the field of pharmacology and forensic toxicology. N.T. Trial, 7/13/21, at 13. With respect to retrograde extrapolation, Dr. Coyer stated that generally, people metabolize the equivalent of one drink per hour. *Id.* at 29. Specifically, he testified that "blood alcohol usually drops at about a rate of twenty milligrams per deciliter per hour or .02 and that's give or take a little bit." *Id.*

Dr. Coyer further explained:

> So, when you do what's referred to as a retrograde extrapolation or a back calculation, you can take a blood alcohol measurement at a particular time. You can then go backwards in time knowing whatever information is there that you reviewed, time of an incident, whatever time there is and you could then calculate back accurately, fairly accurately what the blood alcohol was previous.
>
> So, if an incident occurred and then some time later blood alcohol is drawn, that blood alcohol is going to be lower, because as time goes on it's going to lower itself by about .02 roughly. So, simply if five hours went by, you multiply five times .02, you add that to

---

[5] In **Weir**, this Court considered an appeal from the judgment of sentence stemming from a DUI conviction under the former DUI statute, which did not have a statutory period of time in which a blood sample could be taken. **See** 75 Pa.C.S. § 3731 (repealed eff. Feb. 1, 2004); **compare with** 75 Pa.C.S. § 3802.

the blood alcohol that's measured and that will give you an estimate of what the blood alcohol was at a previous time.

*Id.* at 29-30.

Using this methodology, Dr. Coyer testified to a reasonable degree of scientific certainty that Appellant's BAC at the time of the accident was .23. *Id.* at 18, 31. On cross-examination, Dr. Coyer testified that he made certain assumptions when applying retrograde extrapolation to the facts of Appellant's case. Dr. Coyer testified that he assumed that Appellant did not consume any further alcoholic beverages after the accident. *Id.* at 50. Dr. Coyer also testified that he did not know what time Appellant last drank before the accident. *Id.* at 51. Dr. Coyer further explained:

> There is always going to be an assumption of some sort. There's an objective blood alcohol that was measured that was done back in referral calculation that puts this to about a .2. Based on what I read in the police report and based on my knowledge of a .2 blood alcohol pharmacologically I don't need any more assumptions, there's plenty of facts for me to make my conclusion. Should there be other facts that become made aware of, then I might change my opinion, but my opinion is based not on lack of assumptions, it's considering the facts that I was given.

*Id.* at 62.

Based on our review of this record, we cannot discern any abuse of discretion on the part of the trial court. *See Luster*, 234 A.3d at 838. Indeed, the record reflects that Dr. Coyer's opinion was supported "by reference to facts, testimony or empirical data." *See Snizavich*, 83 A.3d at 195. Accordingly, Appellant is not entitled to relief.

- 16 -

Physical Evidence Recovered from Appellant's Vehicle

Appellant next claims that the trial court erred when it permitted the Commonwealth to "introduce testimony or evidence regarding any items from [Appellant's] vehicle, to wit an empty can and any items found within or around [Appellant's] vehicle, where information regarding the same were not produced in discovery." Appellant's Brief at 35 (some formatting altered). Specifically, Appellant notes that the criminal complaint referenced an empty can recovered from Appellant's vehicle. *Id.* Appellant further argues that between the filing of the complaint and trial, "the Commonwealth failed to produce any additional information regarding this empty can, including any pictures or any additional description outside of what had been contained in the initial criminal complaint filed on March 23, 2019." *Id.*

"[I]t is an appellant's duty to present arguments that are sufficiently developed for our review." *Commonwealth v. Kane*, 10 A.3d 327, 331 (Pa. Super. 2010) (citation omitted); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (holding that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted). *See also* Pa.R.A.P. 2119.

> Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b). This Court will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to conduct meaningful review, we may dismiss the appeal entirely or find certain issues to be waived. Pa.R.A.P. 2101.

- 17 -

*Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (some citations omitted).

In the instant case, Appellant's brief includes a summary of the testimony concerning the physical evidence recovered from his vehicle. However, Appellant does not include any citations to relevant authority in support of his challenge to the admission of that evidence at trial. **See** Appellant's Brief at 35-36. Therefore, because Appellant failed to properly develop this claim for review, it is waived. **See Hardy**, 918 A.2d at 771.

<u>Testimony of Linda Moyer</u>

Appellant next contends that the trial court abused its discretion when it permitted the Commonwealth to "call Linda Moyer as a witness where the prejudicial nature of her testimony outweighed any probative value, if at all." Appellant's Brief at 36. Specifically, Appellant raises the following argument:

> [Ms.] Moyer was not a witness to the March 21, 2019 incident. Her testimony and her references to [] Appellant "offending again" and his sobriety caused severe prejudice to [] Appellant. Her testimony was brief, but sufficiently informed the [j]ury that [] Appellant has had prior issues with sobriety, and that he had prior offenses. As such, her testimony should have been prohibited as its probative value was outweighed by a danger of unfair prejudice to [] Appellant.

*Id.* at 38.

The Pennsylvania Rules of Evidence provide a court with discretion to exclude relevant evidence "if its probative value is outweighed by a danger of," *inter alia*, unfair prejudice. Pa.R.E. 403. This Court has defined unfair prejudice as "a tendency to suggest decision on an improper basis or to divert

- 18 -

the jury's attention away from its duty of weighing the evidence impartially."

***Commonwealth v. Kane***, 188 A.3d 1217, 1228 (Pa. Super. 2018) (citation omitted). This Court has further held:

> Evidence will not be prohibited merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. . . . This Court has stated that is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand.

***Commonwealth v. Kouma***, 53 A.3d 760, 770 (Pa. Super. 2012) (citation omitted and some formatting altered).

Here, at trial, Ms. Moyer testified that on April 7, 2019, Appellant told Ms. Moyer and her husband that he had "re-offended." N.T. Trial, 7/12/21, at 213, 217. Ms. Moyer also testified that Appellant provided further details about the incident at issue in this case. ***Id.*** at 217-19, 221.

In concluding that Ms. Moyer's testimony was admissible, the trial court explained:

> Ms. Moyer testified as to conversations she had previously had with [] Appellant on April 7, 2019. The Commonwealth alleged this testimony to be relevant to establish that [] Appellant admitted to the instant offense to Ms. Moyer. Whether the jury found such testimony to be credible was for them to decide. It is clear, however, that the time frame of [Appellant's] statement to Ms. Moyer implicates an admission of the March 21, 2019 driving under the influence incident. As such, the testimony of Ms. Moyer was certainly probative of an alleged admission and such probative value outweighed any potential prejudicial effect.

Trial Ct. Op. at 8.

- 19 -

Based on the record before us, we discern no abuse of discretion by the trial court. *See Luster*, 234 A.3d at 838. Clearly, Ms. Moyer's testimony was harmful to Appellant, however, evidence will not be precluded simply because it is harmful to a defendant in a criminal case. Courts are not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged[.]" *Commonwealth v. Lark*, 543 A.2d 491, 501 (Pa. 1988). Moreover, our appellate courts have "upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial." *See Commonwealth v. Page*, 965 A.2d.1212, 1221 (Pa. Super. 2009) (citing *Commonwealth v. Gordon*, 673 A.2d 866, 870 (Pa. 1996), *Commonwealth v. Billa*, 555 A.2d 835, 841 (Pa. 1989)). Instantly, on this record, we determine that Ms. Moyer's testimony was not *unfairly* prejudicial, because there is no basis for us to conclude that her testimony inflamed the jury to the point that the jury made a decision based upon anything other than the legal propositions relevant to the case. *See Kane*, 188 A.3d at 1228; *Kouma*, 53 A.3d at 770. Accordingly, Appellant is not entitled to relief.

<u>Testimony of Joe Clemente</u>

Appellant likewise alleges that the trial court erred when it permitted testimony from Joe Clemente because the "prejudicial nature of his testimony outweighed any probative value, if any at all." Appellant's Brief at 38.

Appellant's argument for this issue consists of a summary of Mr. Clemente's trial testimony. *See id.* at 38-39. At no point does Appellant cite to any relevant authority to develop his argument that the trial court erred when it permitted Mr. Clemente to testify. Because Appellant failed to develop his argument as to effectuate meaningful appellate review, this issue is waived on appeal.[6] *See Hardy*, 918 A.2d at 771.

Best Evidence Rule

Appellant also contends that allowing testimony from Mr. Clemente "without production of an incident report from the date of the incident was in violation of the Best Evidence Rule." Appellant's Brief at 38.[7] Specifically, Appellant argues that Mr. Clemente signed a statement that was dated September 14, 2019. *Id.* at 39. Appellant further argues that a written report by Mr. Clemente made on March 21, 2019 "would have been more reliable

---

[6] To the extent Appellant claims that the trial court erred because Mr. Clemente's testimony failed to establish Appellant's guilt, we note that it is in the jury's sole province to determine Mr. Clemente's credibility and the jury was free to believe all, some, or none of Mr. Clemente's testimony. *See Commonwealth v. Houser*, 18 A.3d 1128, 1136 (Pa. 2011).

[7] We note that despite raising eleven issues for our review in his statement of questions presented, the argument section of Appellant's brief is divided into ten subsections. *See* Pa.R.A.P. 2119(a) (stating that "[t]he argument shall be divided into as many parts as there are questions to be argued"). We do not condone Appellant's failure to comply with the Rules of Appellate Procedure, but because the noncompliance does not impede our review, we decline to find waiver on this basis. *See, e.g.*, *Commonwealth v. Levy*, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (declining to find waiver on the basis of the appellant's failure to comply with the Rules of Appellate Procedure, where the errors did not impede with this Court's review).

- 21 -

than a statement made six months later, and significantly more reliable than his recollection, or lack thereof, during trial twenty-seven months after the incident." ***Id.*** at 40.

Our review of the record confirms that Appellant did not raise an objection under the Best Evidence Rule at any point during Mr. Clemente's testimony. ***See*** N.T. Trial, 7/12/21, at 77-88. Therefore, because Appellant failed to raise a timely objection before the trial court, it is waived for appellate review. ***See*** Pa.R.A.P. 302(a); ***Marrero***, 217 A.3d at 892; ***Fitzgerald***, 877 A.2d at 1274.

**Discretionary Aspects of Sentence**

In his next issue, Appellant contends that the trial court imposed an excessive sentence "at the highest range of the sentencing guidelines on the charge of driving under the influence, highest rate – second offense." Appellant's Brief at 40. Appellant further argues that "[t]he trial court did not impose a sentence that would reasonably meet the rehabilitative needs of [] Appellant." ***Id.*** at 42.

The Commonwealth responds that Appellant waived this claim by failing to include a Pa.R.A.P. 2119(f) statement in his brief. ***See*** Commonwealth's Brief at 36-37.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

(1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted). If an appellant fails to include a Rule 2119(f) statement in his or her brief and the Commonwealth objects to its omission, the challenge to the discretionary aspects of sentence is waived on appeal. *Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa. Super. 2016).

Here, Appellant failed to include a Rule 2119(f) statement in his brief, and the Commonwealth raised an objection to its omission. For these reasons, Appellant's discretionary aspect of sentence challenge is waived on appeal. *See Griffin*, 149 A.3d at 353.

**Appellant's Motion for Reconsideration of Sentence**

In his final issue, Appellant claims that his due process rights were violated because the trial court denied his motion for reconsideration of sentence without specifically addressing all of his claims. Appellant's Brief at 43. However, Appellant does not indicate which claims the trial court failed to address or provide any argument in support of those issues. As noted above, this Court will not serve as an appellant's counsel, nor will it scour the record in search of potential appellate issues. *See Hardy*, 918 A.2d at 771. Because Appellant failed to adequately develop this issue to effectuate

meaningful appellate review, we find this issue to be waived on appeal. ***Id.***

For these reasons, we affirm.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/26/2024